IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARIO BANEGAS,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| v. | : | NO. 08-5348 |
| | : | |
| **JOHN HAMPTON et al.,** | : | |
| **Defendants** | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                                                              **April 22, 2009**

Mario Banegas, an inmate incarcerated at the Chester County Prison located in West Chester, Pennsylvania, was physically beaten in his cell by an inmate who was allowed in by two of the prison's corrections officers. These officers made no attempt to stop the assailant or otherwise aid Mr. Banegas and were charged with crimes for their actions.

Banegas initiated this Section 1983 action[1] against his assailant, the corrections officers, Mr. D. Edward McFadden (Warden of Chester County Prison), the Chester County Prison Board, and the County of Chester. Warden McFadden, the Prison Board, and the County are named in only one count and have filed the instant motion to dismiss

---

[1] 42 U.S.C. § 1983 provides in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and law, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."
    By itself, Section 1983 confers no substantive rights. It provides a remedy for redressing constitutional and federal law violations made under the color of state law. City of Okla.City v. Tuttle, 471 U.S. 808, 816 (1985); Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906-07 (3d Cir. 1997).

(Document #5).  Upon consideration of the parties' memoranda, I will grant the motion in part and deny it in part.

**I. Background**

Mario Banegas is an inmate at Chester County Prison.  (Compl. ¶ 24.)  He was housed in the facility's Restricted Housing Unit.  (Id. ¶ 25.)  John Hampton and Charles Goodman were corrections officers at the prison.  (Id. ¶¶ 7–8.)  Mr. D. Edward McFadden is the prison's warden.  (Id. ¶ 6.)  Mr. Stephon Gilchrist is an inmate who was housed at the Chester Country Prison during the relevant time; he has since been relocated to another facility.  (Id. ¶ 9.)  Banegas and Gilchrist were both in the Restricted Housing Unit but housed in separate cells.  (Id. ¶¶ 25, 28.)

At some prior time, Mr. Banegas had made statements criticizing Islam to Mr. Gilchrist who is a Muslim.  (Id. ¶ 29.)  Officers Hampton and Goodman knew that Mr. Banegas had made such statements and conspired with Gilchrist to attack Banegas.  (Id. ¶ 30.)

On March 18, 2007, Hampton, Goodman, and Gilchrist put their plan into action.  The officers asked a colleague to open the door to Mr. Banegas' cell.  (Id. ¶ 30.)  The officers then allowed Gilchrist to enter and attack Banegas.  (Id. ¶ 31.)  They made no attempt to restrain Gilchrist or otherwise protect Banegas.  (Id.)  Banegas lost consciousness and suffered a broken rib.  (Id. ¶ 35.)  He incurred approximately $3500 in

medical costs.  (Id. ¶ 38.)

On June 8, 2007, Officers Hampton and Goodman were criminally charged for their role in the attack and for making unsworn falsifications to investigating authorities.[2] (Id. ¶¶ 40–41.)  On November 26, 2007, both officers pleaded guilty.  (Id. ¶¶ 42–43.)

Mr. Banegas filed this complaint naming Officers Hampton and Goodman, Mr. Gilchrist, Warden McFadden, the Prison Board, and the County as defendants.  Warden McFadden, the Prison Board, and the County are named in only one cause of action.  That count alleges that the defendants violated Banegas' Eighth Amendment rights by failing to properly train and supervise the officers assigned to the Restricted Housing Unit.  The count also alleges that the defendants violated Banegas' Fourteenth Amendment rights by failing to protect him from a danger they had created.  (Id. ¶ 61.)

More specifically, the complaint identifies the following shortfalls:

   a.   Fail[ure] to adopt, maintain and enforce appropriate security classification/custody, housing procedures, policies and training;

   b.   Fail[ure] to adopt, maintain and enforce appropriate and immediately effective protective custody procedures and policies to conduct appropriately related training;

   c.   Fail[ure] to adopt, maintain and enforce appropriate and immediate inmate separation procedures and policies and to conduct appropriately related training;

   d.   Fail[ure] to maintain adequate staff to properly supervise the prison to prevent, respond to and stop assaults against prisoners,

---

[2] The officers allegedly lied to investigators and stated that Mr. Banegas' injuries were self-inflicted.  (Compl. ¶ 40.)

                particularly in the Restricted Housing Unit where Banegas was housed;

    e.    Fail[ure] to ensure that all areas of the Restrict[ed] Housing Unit have cameras that are fully functioning and carefully monitored at all times by correctional supervisors and, in particular, supervisors in the "bubble" who can see exactly what is going on in all areas of the block over which he, she or they have power to open cell doors;

    f.    Fail[ure] to ensure that correctional supervisors in the Restricted Housing Unit have access to sufficient information about inmates housed on the block, including but not limited to knowledge of the inmates' program codes, criminal history and mental health problems, if any, in order to be able to effectively supervise the inmates on the block;

    h.    Fail[ure] to adequately screen and conduct background and other personal checks on corrections officers who will work in the Restricted Housing Unit;

    i.    Fail[ure] to properly supervise corrections officers who work in the Restricted Housing Unit.

(Id.)

      Warden McFadden, the Prison Board, and the County moved to dismiss the count against them. They argue that Mr. Banegas failed to plead that the warden was personally involved in the attack, failed to allege that the warden was deliberately indifferent as a supervisor, failed to plead that prison policies proximately caused his injuries, and failed to set forth facts establishing that the moving defendants used their authority to place him in a foreseeable dangerous position. (Defs.' Mot. to Dismiss at 2–3.)

**II. Standard of review**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted examines the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The factual allegations must be sufficient to make the claim for relief more than just speculative. Bell Atlantic Corp. v. Twombly, 550 US 544, 127 S.Ct. 1955, 1965 (2007). In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Id. See also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

The Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which he bases his claim. Conley, 355 U.S. at 47. Rather, the Rules require a "short and plain statement" of the claim that will provide fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests. Id. The claim must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 127 S.Ct. at 1965)).

The defendant's burden is to demonstrate that no viable claim has been presented. Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988). Neither "bald assertions" nor

"vague and conclusory allegations" will be accepted as true.  See Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997); Sterling v. Southeastern Pennsylvania Transp. Auth., 897 F. Supp. 893 (E.D. Pa. 1995).

**III. Discussion**

The claims against Warden McFadden, the Prison Board, and the County are based upon the Eighth and Fourteenth Amendments.  I will grant the motion with respect to the claim against the warden in his official capacity, and deny it with respect to all other claims.

**A. Municipal liability, generally**

Municipalities and other government bodies may be sued under Section 1983. Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690–92 (1992).  The plaintiff must establish: (1) the municipality had a policy[3] or custom[4] that deprived him of

---

[3] A municipal policy, for purposes of § 1983, is a "statement, ordinance, regulation, or decision officially adopted and promulgated by [a government] body's officers." Monell, 436 U.S. at 690; see also Berg v. County of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000) ("Policy is made when a 'decisionmaker possessing final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict.") (citation omitted).  Such a policy "generally implies a course of action consciously chosen from among various alternatives." City of Okla. City v. Tuttle, 471 U.S. 808, 823 (1985).  Limiting liability to identifiable policies ensures that municipalities are only liable for "deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 403–04 (1997).

[4] A custom, while not formally adopted by the municipality, may lead to liability if the "relevant practice is so widespread as to have the force of law." Brown, 520 U.S. at 404.  This requirement should not be construed so broadly as to circumvent Monell: "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless

his constitutional rights; (2) the municipality acted deliberately and was the moving force behind the deprivation; and (3) his injury was caused by the identified policy or custom. Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 403–04 (1997) (citing, *inter alia*, Monell, 436 U.S. at 690–91, 694). Liability may not be imposed solely on a *respondeat superior* theory. Monell, 436 U.S. at 692. Section 1983 only "imposes liability on a government that, under color of some official policy, 'causes' an employee to violate another's constitutional rights." Id.

In City of Canton v. Harris, the Supreme Court built on Monell to conclude that a municipality may be liable for failing to train its employees when that failure evidenced "deliberate indifference to the rights of persons with whom [the municipal employees] come into contact." 489 U.S. 378, 389–90 (1989). In other words, "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983." Id. at 389. This accords with prior case law declining to impose liability solely based on a *respondeat superior* theory.

The court's inquiry is to be focused on "the adequacy of the training program in relation to the tasks the employees must perform." Id. at 389–90. Mere allegations that the municipality should have or could have incorporated other training programs are insufficient. Id. at 391. "That a particular officer may be unsatisfactorily trained will not

---

proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy..." Tuttle, 471 U.S. at 823–824.

alone suffice to fasten liability . . . for the officer's shortcomings may have resulted from factors other than a faulty training program." Id. at 390–91.

Deliberate indifference is more than simple negligence. It is "a deliberate choice to follow a course of action [that] is made from among various alternatives" by municipal officials. Id. at 389 (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 483–84 (1986) (plurality) (Brennan, J.)). The court may properly conclude that the municipality displayed deliberate indifference if (1) "the need for more or different training [was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights," or (2) the municipality had received complaints about the same or similar constitutional violations and still failed to act.[5] Id. at 390 & n.10; see also Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999) (requiring a showing of deliberate indifference for a failure to train claim); Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989) (requiring the plaintiff to demonstrate that the officials had actual knowledge of a certain type of danger because the risk was "so great and so obvious," or that similar types of harms had occurred on previous occasions and officials still failed to respond). The indifference must be "on the part of lawmakers or other officials with the authority to make municipal

---

[5] The Third Circuit Court of Appeals has cited with approval the following three-part test provided in Walker v. City of New York: "[I]n order for a municipality's failure to train or supervise to amount to deliberate indifference, it must be shown that (1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999) (citing Walker, 974 F.2d 293, 297–98 (2d Cir. 1992)).

policy." Simmons v. City of Phila., 947 F.2d 1042, 1059 (3d Cir. 1991).

### B. Supervisory liability, generally

A supervisory municipal employee may be held liable in his or her individual capacity under Section 1983. The Third Circuit applies the same Monell standard for suits alleging individual liability. See, e.g., Sample, 885 F.2d 1099, 1118 ("[T]he standard of individual liability for supervisory public officials will be found to be no less stringent than the standard of liability for the public entities they serve. In either case, a 'person' is not the 'moving force [behind] the constitutional violation' of a subordinate, unless that 'person'—whether a natural one or a municipality—has exhibited deliberate indifference to the plight of the person deprived."). Similarly, liability may not be based solely on a theory of *respondeat superior*; the official must have had some personal involvement in the events giving rise to the cause of action. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

The foregoing standards for Section 1983 municipal and supervisor liability claims must be read in light of the federal courts' liberal notice pleading requirements. Federal Rule of Civil Procedure 8 simply requires that a pleading include a "short and plain statement of the claim showing that the pleader is entitled to relief." The claimant does not have to set out in detail all the facts upon which a claim is based, but must merely provide a statement sufficient to put the opposing party on notice of the claim.

**B. Section 1983 claims**

          **1. Monell Claims against the County and the Prison Board**

I will deny the motion with respect to the County and the Prison Board because the complaint alleges sufficient facts to provide notice of the basis of the failure to train claim. It specifically identifies the underlying incident, the date it took place, and the individuals involved. It alleges, *inter alia*, that the County and the Prison Board failed to provide the requisite training on protective custody, inmate separation, and on how to control and respond to prisoner assaults.[6] (Compl. ¶ 61.) Without this training, the Restricted Housing Unit officers may have been unprepared to face the challenging demands of their positions, thereby increasing the danger to all inmates in the unit. Despite allegedly knowing this high risk of danger, neither the County nor the Prison Board believed it necessary to improve or otherwise change the training procedures. If true, these facts are sufficient to indicate that the defendants may have been deliberately indifferent to the inmates' safety.

I do note that the complaint is not precise in its description of how the policies were deficient. It does not establish how the existing training program is inadequate to meet the daily tasks of officers assigned to the Restricted Housing Unit. Outside of its

---

[6] The fact that I have addressed the protective custody, inmate separation, and conflict control training policies is neither an endorsement of those allegations nor a rejection of the others listed in the complaint. Those specific examples are used simply because they directly address the moving defendants' dismissal argument. To the extent that other alleged training failures set forth in the complaint support the plaintiff's claim, he is certainly entitled to incorporate them into his case.

own conclusory allegations, the complaint presents almost no facts suggesting deliberate indifference.[7] (See id. ¶¶ 61–65.)  Under our liberal notice pleading standard, however, the plaintiff is only required to "[allege] enough facts to raise a reasonable expectation that discovery will reveal evidence" of additional facts that will bolster the claim. Twombly, 550 U.S. at 556.  Here, the complaint directly addresses the training policies on protecting inmates and controlling conflict.  This is sufficient to state a Monell claim, and the County and the Prison Board have fair notice of the claim.

### 2. Warden McFadden

I will grant in part and deny in part the motion with respect to the claims against Warden McFadden.  Claims against municipal officials in their supervisory capacity may be in either their official or individual capacities.  Warden McFadden may not be sued here in his official capacity because the claim would be redundant to those against the County.  The claims against the warden in his individual capacity may proceed.

#### i. Official capacity

The claims against Warden McFadden in his official capacity will be dismissed.  A state officer acting in his official capacity is not a "person" under § 1983.  Will v. Mich.

---

[7] Mr. Banegas argues that the Prison Board and the County were deliberately indifferent because the Restricted Housing Unit officers were inadequately trained to keep order among "the most dangerous criminals and alleged criminals who are awaiting trial." (Pl.'s Opp'n Mem. at 7.)  The daily demands of a Restricted Housing Unit officer's job may require certain specialized training, but the plaintiff's argument seems to put the cart before the horse.  The mere fact that an incident occurred does not indicate that current procedures are insufficient.  Banegas must establish how the training procedures were inadequate to the officers' needs.

Dep't of State Police, 491 U.S. 58, 71 (1989). Suits against state officers in their official capacity are "only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165–66 (1985) (quoting Monell, 436 U.S. at 690 n.55). Under this standard, the claim against Warden McFadden in his official capacity is redundant with the Monell claim against the County and/or the Prison Board. Accordingly, I will dismiss it.

### ii. Individual capacity

I will deny the motion as to the claims against the warden in his individual capacity. There are two theories of supervisory liability under § 1983. The first theory may be applied when the "[the supervising official] participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." A.M. v. Luzerne County Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (citing Baker v. Monroe Twp., 50 F.3d 1186, 1190–91 (3d Cir. 1995)). The second basis arises when the supervisor, as a policymaker, has acted "with deliberate indifference to the consequences [of his or her actions], [and] established and maintained a policy, practice or custom which directly caused [the] constitutional harm." A.M., 372 F.3d at 586 (quoting Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989)).

Mr. Banegas' claim is properly based on the latter theory as there is no allegation that the warden personally participated or directed the officers to act in this way. To

prevail under this theory, Banegas must

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or practice created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk, and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

Brown v. Muhlenberg Twp., 269 F.3d 205, 216 (3d Cir. 2001) (citing Sample, 885 F.2d at 1118). The supervisor's conduct must display a "deliberate indifference" to the inherent risks of existing practices. Kis v. County of Schuylkill, 866 F. Supp. 1462, 1474 (E.D. Pa. 1994).

Here, the complaint presents allegations similar to those raised against the County and the Prison Board, and I will deny the motion as to this part. The harm to Mr. Banegas is alleged to have been foreseeable and direct because inadequately trained officers were assigned to the Restricted Housing Unit, a section of the prison where the potential for physical violence was great. (Compl. ¶ 61.) Warden McFadden placed those guards in the Restricted Housing Unit despite knowing the dangers to the inmates. (Id.) As an inmate, Mr. Banegas was a foreseeable victim of the warden's failure to train. (Id. ¶¶ 1, 6 (establishing that Mr. Banegas is an inmate at the facility overseen by Warden McFadden).) Finally, the warden's failure to train the Restricted Housing Unit officers directly increased the danger Mr. Banegas would have otherwise faced if adequately trained officers had been posted. Under the standard of review of a motion to dismiss, I

find that this is sufficient to state a supervisory liability claim against Warden McFadden in his personal capacity.

**C. Fourteenth Amendment**

Mr. Banegas also alleges that the defendants failed to protect him in violation of his Fourteenth Amendment rights. Generally, the government has no duty to protect its citizens from the acts of private individuals. See DeShaney v. Winnebago County Dep't of Soc. Serv., 489 U.S. 189 (1989). The Court did not go so far as to foreclose any possibility of government liability. Id. at 198 ("[I]n certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals."). An exception to this rule is the "state-created danger" exception, which was adopted by the Third Circuit in Kniepp v. Tedder, 95 F.3d 1199 (3d Cir. 1999).

The exception is comprised of the following elements:

(1) The harm ultimately caused was foreseeable and fairly direct;

(2) A state actor acted with a degree of culpability that shocks the conscience;

(3) A relationship existed between the state and the plaintiff such that the plaintiff was a foreseeable victim of the defendant's acts; and

(4) The state actor affirmatively used his or her authority in a way that created a danger to the plaintiff or that rendered that citizen more vulnerable to danger than had the state not acted at all.

Bright v. Westmoreland County, 443 F.3d 276, 281 (3d Cir. 2006).  The plaintiff must prove that the state acted with deliberate indifference.  See Gonzalez v. Angelilli, 40 F. Supp. 2d 615, 619 (E.D. Pa. 1999).

I will deny the motion as to this claim.  As with the Eighth Amendment claims, the complaint states that the failure to adequately screen and train the officers posted in the Restricted Housing Unit created an unreasonable danger.  These failures "shock the conscience" because of the dangerous tendencies of the inmates housed there, the potential for physical violence, and the concomitant need for protective supervision.  As a prisoner in a Chester County facility, Mr. Banegas was a foreseeable victim of the moving defendants' failures to screen and train.  Finally, the moving defendants' actions created the danger to Mr. Banegas by exposing him to an increased risk of physical violence at the hands of his fellow inmates.

## IV. Conclusion

For the foregoing reasons, I will grant the motion in part and deny it in part.